IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | 1:07CV00693 |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, James Lee, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed an application for Disability Insurance Benefits (DIB) on January 30, 2004, with an alleged onset of disability ("AOD") of April 1, 2003.[1] See Tr. 53. The application was denied initially and upon reconsideration. Tr. 36, 39. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ).

---

[1] By letter dated September 12, 2006, Plaintiff amended his AOD to December 9, 2003. See Tr. 111.

Tr. 52. Present at the hearing, held on October 2, 2006, were Plaintiff, his attorney, and a vocational expert. Tr. 220.

By decision dated November 14, 2006, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 11. On July 17, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 4, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since December 9, 2003, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. The claimant has the following severe combination of impairments: post-traumatic stress disorder and personality disorder (20 CFR 404.1520(c)).

Tr. 16. He continued:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant would be limited to the performance of work involving unskilled, simple, routine, repetitive tasks at all physical exertional levels, in a non-production setting with no significant public contact.

2

Tr. 17. The ALJ found that Plaintiff was unable to perform his past relevant work. Tr. 20.

Plaintiff, born on January 28, 1948, was fifty-five years old at the time of his AOD, regulatorily defined as "closely approaching advanced age." See id. (citing 20 C.F.R. § 404.1563). The ALJ found that Plaintiff had at least a high school education, and could communicate in English. He added that transferability of job skills was not an issue in the case. Based on these factors, Plaintiff's residual functional capacity,[2] and the VE's testimony, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 21. Accordingly, the ALJ decided that Plaintiff had not been under a "disability," as defined in the Act, from December 9, 2003, through the date of his decision. Id.

**Analysis**

In his brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to (1) adopt his treating physicians' opinions; (2) find that he met a "Listing"; and (3) discuss the disability rating of the Veterans' Administration ("VA"). The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

---

[2] See ALJ finding 5, supra.

Scope of Review

The Act provides that, for "eligible"[3] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).[4]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v.

---

[3] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1).

[4] All regulatory references will be to Title 20 of the Code of Federal Regulations (C.F.R.), unless otherwise stated.

Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).  Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).  Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational.  Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issues

1.  Treating Physicians' Opinions

Plaintiff complains that the ALJ erred in not according "controlling weight" to the opinions of her treating physicians.  The regulations require that all medical opinions in a case be considered.  Section 404.1527(b).  Treating physician

5

opinions, however, are accorded special status. See section 404.1527(d)(2). "Courts typically 'accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (internal citation omitted)).

This rule, however, does not mandate that such opinion be given controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight only if it is (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the record. See section 404.1527. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). See also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

Plaintiff argues that the ALJ erred in not giving controlling weight to the opinion of Dr. John Lindgren that Plaintiff cannot work. SSA regulations reason that the

6

Commissioner should give more weight to the opinion of a treating physician because that physician is most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. Section 404.1527(d)(2). See also Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986). But at his very first appointment with Plaintiff on December 9, 2003, Dr. Lindgren concluded that Plaintiff was "unable to sustain social relationships [or] work relationships." Tr. 158. Moreover, Dr. Lindgren's records do not support his opinion. After a six-month interval, Plaintiff saw the doctor only twice more for "routine medication checkups," during which the doctor simply noted Plaintiff's complaints, observed his affect, and adjusted his medication. See Tr. 150, 152.

In support of his opinion, Dr. Lindgren explained that Plaintiff "describes numerous symptoms including concentration and memory problems and constant irritability and anger problems which interfere *in succeeding in the work environment.*" Tr. 158 (emphasis added). But this observation is inconsistent with the record as a whole. The military experiences from which Plaintiff's symptoms allegedly stem preceded this visit by *thirty-five years.* In all of that time, Plaintiff had never sought any treatment. In fact, after his separation from the military, Plaintiff attended four years of business college. See Tr. 78, 223.

Plaintiff's earning record reveals that he worked steadily from that time, earning as much as $60,000 at one point. See Tr. 69. Plaintiff even maintained

7

employment, without break, with one employer, for over twenty years.  See, e.g., Tr. 223.  With that employer, he performed what the vocational expert described as "high level semi-skilled to skilled" work.  Tr. 234.  Plaintiff described this work as "provid[ing] technical direction *to subordinates,*" and he claimed to supervise twenty people.  Tr. 73 (emphasis added).  Further, Plaintiff did not stop working because of his symptoms but, rather, because his employer terminated his employment.  See Tr. 72, 234.  Cf. Hunter, 993 F.2d at 35 (that plaintiff "'stopped working due to a layoff rather than any physical or psychiatric impairment'" constituted substantial evidence to support the ALJ's decision).

Plaintiff adds that both Dr. Lindgren and his other treating physician, Dr. Alton Williams of the VA, focused on his difficulty in sustaining relationships.  Yet Plaintiff has been married not once, but *twice*, for substantial periods of time:  the first for some twenty-one years, and the second, from 1991 through at least the date of the hearing.[5]  See Tr. 53-54, 226.  And his work history, discussed above, reveals no difficulty in sustaining work relationships.

Plaintiff also argues that there is no inconsistent opinion in the record, but he is mistaken.  A state agency consultant opined only that Plaintiff would have moderate difficulty in maintaining social functioning, but believed that he would be

---

[5]  Plaintiff's second wife stated that they had "been together for 25 years," apparently for at least two years before they were married.  Tr. 91; see also Tr. 81.

neither markedly nor extremely limited.  See Tr. 135.  A second expert affirmed this opinion.  Tr. 42.  SSA has stated that state agency consultants and program psychologists are experts in its disability programs, and fact finders must consider their findings of fact.  See section 404.1527(f).  Thus, the ALJ committed no error in not adopting the treating physicians' opinions as to Plaintiff's ability to sustain relationships.

Plaintiff alleges that the ALJ also erred in not accepting the opinion of Dr. Williams that Plaintiff met Listing 12.06; this discussion follows.

2.  Listing 12.06

The Listing of Impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1 (part A), is designed to streamline the benefit determination analysis by identifying those "impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"  Sullivan v. Zebley, 493 U.S. 521, 532 (1990) (citing section 416.925(a) (1989)).  It is described as

> a catalog of various disabilities, which are defined by "specific medical signs, symptoms, or laboratory test results." [Zebley, 493 U.S. at 530.] In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing.  Id., 20 C.F.R. § 404.1526(a).

Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990).  If the claimant proves that he meets a listing, the ALJ need not move on to the next step in the sequential

evaluation process. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Plaintiff argues that the ALJ erred in proceeding past the third step of the sequential evaluation process because he meets Listing 12.06 based on Dr. Williams's opinion. Listing 12.06 is entitled "anxiety related disorders." Pt. 404, Subpt. P, App. 1 [hereinafter, "The Listings"], § 12.06. "In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms[.]" Id. To meet Listing 12.06, Plaintiff must show that he suffers from an anxiety related disorder that meets "[t]he required level of severity for these disorders [which] is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." Id.

Plaintiff contends that he meets the "A" criteria of the Listing based on Dr. Williams's statement that he suffers from "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." Tr. 218; see also The Listings, § 12.06(A)(5). Yet, as discussed above, there is no indication, at least as of Plaintiff's initial AOD (which coincided with his date of termination), that Plaintiff's "recollections" so distressed him that he was unable to work. And there is no showing, as of the time of his revised AOD, that Plaintiff's symptoms had escalated so as to impair his ability to work.

10

Neither do Dr. Williams's records support this statement. After his initial visit with this doctor, Plaintiff did not see him again until May 9, 2005, almost six months later. Plaintiff complained of depressed mood, anhedonia, poor sleep, low energy, nightmares, hypervigilance, and irritability, but experienced neither audio nor visual hallucinations, and suffered from neither suicidal nor homicidal ideations. Tr. 214. Dr. Williams reported that Plaintiff's affect was constricted, but his insight and judgment were both good. Plaintiff's eye contact was good, and his speech of normal rate and volume.

At Plaintiff's next visit, some three months later, Plaintiff said that he was "'a little'" improved on his medications, his mood was "'a little better,'" and he was less irritable. Tr. 213. This improvement occurred in spite of his facing "an upcoming legal issue," where "he might have to testify," and which had caused him stress. Id. Dr. Williams found Plaintiff's mental status to be unchanged except that his affect was slightly brighter. The doctor's notes follow essentially this same pattern throughout the remaining four visits documented in the transcript, which visits occurred every three months. When, at one visit, Dr. Williams suggested that Plaintiff attend anger management classes for his irritability, Plaintiff declined.[6] Cf.

---

[6] Plaintiff also declined an earlier offer to attend group therapy sessions at the VA. Tr. 180.

section 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

Further, although Plaintiff claimed to be "first bother[ed]" by his condition in December 1968, Plaintiff did not seek treatment for another twenty-five years, and he had a total of only thirteen mental health related visits from his AOD through the date of the hearing – almost three years. Cf. Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34487 (claimant's persistent attempts to obtain relief of symptoms strongly indicate "that the symptoms are a source of distress"). Plaintiff's symptoms were apparently never so "marked" that he sought hospitalization, turned to drugs or alcohol, or suffered from legal difficulties. Nor, of course, did he experience work-related consequences, as evidenced by his twenty-plus years with one employer, which ended only as a result of a layoff. See The Listings, § 12.00(C)(2) (listing "firings" as evidence of impaired social functioning).

Plaintiff next claims that he meets the "B" criteria of Listing 12.06, which requires that Plaintiff's "recurrent and intrusive recollections" result in at least *two* of the following:

   1. marked restriction of activities of daily living; or
   2. marked difficulties in maintaining social functioning; or
   3. marked difficulties in maintaining concentration, persistence, or pace; or
   4. repeated episodes of decompensation, each of extended duration.

12

Listing 12.06(B). Indeed, Dr. Williams did opine that Plaintiff suffered from marked difficulty in maintaining social functioning, Tr. 218; he did *not*, however, find that Plaintiff satisfied any of the other criteria.

Plaintiff cites to the doctor's findings that he experienced marked limitations in his ability "to perform at a consistent pace without an unreasonable number and length of rest periods," Tr. 219, but this is *not* one of the four "B" criteria. Rather, this criteria is a measure of an individual's mental residual functional capacity ("MRFC"). Assessment of MRFC is not performed until *after* it has been determined that the individual does not meet a listing. See § 404.1520a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity."). Accordingly, Plaintiff cannot rely on this second statement to satisfy Listing 12.06.

3. Other Agency Opinion

Last of all, Plaintiff argues that the ALJ erred because he did not discuss the VA determination that Plaintiff qualifies for 100 percent disability. SSA regulations make it clear that a decision by any other agency is based on that agency's rules, whereas SSA disability determinations are based on social security law. Section 404.1504. Such other decision, therefore, is not binding on SSA; only an SSA actor may make the disability determination, and the responsibility for deciding disability is reserved to the Commissioner. See section 404.1527(e).

13

The regulations require, however, that SSA "evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies. Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." SSR 06-03p, 71 Fed. Reg. 45593-03, 45597 (citing section 404.1512(b)(5)). Ruling 06-03p advises the adjudicator to explain in his decision the consideration he gives to such other agency opinion.

The ALJ failed to follow this instruction, and the court is constrained to recommend remand for this reason alone. The regulatory language is mandatory. And it is the Commissioner's responsibility to build a record which will withstand judicial review. While the Defendant argues persuasively that there are reasons to avoid remand, the court cannot ignore the mandate that the Commissioner must consider the VA determination and explain in his decision the consideration he gives to that determination.

**Conclusion and Recommendation**

Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **REVERSED**, and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with

14

this Recommendation. To this extent, Plaintiff's motion for judgment on the pleadings (pleading no. 10) seeking a remand of the Commissioner's decision should be **GRANTED**. To the extent that Plaintiff's motion seeks an immediate award of benefits, it should be **DENIED**. Defendant's motion for judgment on the pleadings (pleading no. 12) should be **DENIED**.

WALLACE W. DIXON
United States Magistrate Judge

September 3, 2008